AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 3:26 mj 060 |
| EDWARD DUANE CRAWFORD | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  June 8, 2025  in the county of  Clark  in the  Southern  District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of ammunition |
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |
| 26 U.S.C. § 5861(d) | Receipt or possession of unregistered firearm |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Christopher M. Reed*
Complainant's signature

CHRISTOPHER REED, ATF SA
*Printed name and title*

Sworn to before me and signed ~~in my presence~~ via telephone.

Date: 2/10/2026

*Judge's signature*

City and state: DAYTON, OHIO
CAROLINE H. GENTRY, U.S. MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT

I, Special Agent Christopher M. Reed ("Affiant"), being duly sworn, depose and state the following:

1. I make this affidavit from personal knowledge based on my participation in this investigation, including witness interviews and reports by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware relating to this investigation.

2. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since May 2008. I am presently assigned to the ATF Columbus Field Division, Dayton Satellite Office. I attended formal training at the Federal Law Enforcement Training Center, where I completed the Criminal Investigator Training Program, and the ATF National Academy, where I completed Special Agent Basic Training. I have received additional training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and the National Firearms Act of 1934. Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States. Prior to my employment with ATF, I received additional law enforcement training at the Indianapolis Police Department's Police Academy and served the Indianapolis Metropolitan Police Department for approximately (8) years as a uniformed officer, narcotics detective, and an ATF Task Force Officer.

1

3. I am currently investigating Federal violations committed by **Edward Duane Crawford ("CRAWFORD")**, namely, 18 U.S.C. § 922(g)(1) – Possession of Ammunition by a Prohibited Person; 18 U.S.C. § 922(g)(1) – Possession of a Firearm by a Prohibited Person; and 26 U.S.C. § 5861(d) Receipt or Possession of Unregistered Firearm.

4. On or about June 8, 2025, at approximately 07:01 a.m., Ohio State Highway Patrol Trooper Coleton Piatt was northbound on East Street in the city of Springfield, Clark County, Ohio when he observed a 2007 red Chevrolet Cobalt approaching his patrol car traveling southbound. As the Chevrolet passed, Trooper Piatt observed it had excessively dark window tint; the driver then applied the brakes for no reason, and Trooper Piatt observed there was only one functional rear brake light. Based on these observations, Trooper Piatt conducted a U-turn to initiate a traffic stop.

5. As Trooper Piatt rounded the corner, the Chevrolet Cobalt had abruptly turned right onto Pleasant Street. Trooper Piatt next observed the Chevrolet increase its speed and appeared to attempt to evade him. Trooper Piatt activated his overhead emergency lights and audible siren to try to catch up to the vehicle. The Trooper further noted the Chevrolet Cobalt traveled at high rates of speed in a residential area, failed to stop at multiple stop signs, and then drove into a residential driveway located at 437 Scott Street, Springfield, Ohio.

6. After catching up to the Chevrolet Cobalt, Trooper Piatt approached, cleared the vehicle, and observed it was unoccupied. He then observed there were two cell phones within the vehicle. One of the cellular devices was located on the driver's side floorboard and was actively on a FaceTime call with an unknown person. The other cellular device was located on the

front passenger seat, and it repeatedly kept ringing. The vehicle registration, Ohio "KPG2662," returned to an individual identified as A.F.[1], from Liberty Township, Ohio.

7. While waiting on backup, dispatch sent Warren County Sheriff's Office deputies to A.F.'s residence to ensure the vehicle was not stolen. Warren County deputies spoke with A.F.'s ex-husband, who advised he had not spoken to or seen A.F. in over a month. When additional units arrived on the scene, the immediate area was checked, and they were unable to locate any suspects. Trooper Piatt spoke to the homeowner at 437 Scott Street, R.W.[2]. R.W. stated he had no recollection of who the vehicle belonged to and wanted the vehicle to be towed.

8. While waiting for the next available tow truck, Troopers Jenkins and Piatt completed an administrative inventory of the vehicle. During the administrative inventory, Trooper Piatt located a black bag located on the backseat. Inside the black bag were four pistol magazines that contained .45 caliber ammunition. There were also two (2) $CO_2$ cartridges with fuses hanging out of the top and an orange pill bottle with seven (7) peach-colored oval pills with markings "153". The pills are suspected to be buprenorphine hydrochloride, a Schedule III controlled substance. A female walked up on the scene and asked if her uncle, "Duane Crawford," was arrested. When questioned further, the female stated she heard that Duane Crawford, who commonly drives the Chevrolet Cobalt, was stopped and arrested. The two $CO_2$ cartridges raised concern because of the unknown lethality.

---

[1] I know the full name of A.F.
[2] I know the full name of R.W.

3

9. For precautionary purposes, the Dayton Bomb Squad responded to the scene and took possession of the suspected explosive devices. These suspected explosive devices are commonly referred to as "crickets" or "cricket bombs." An x-ray of the suspected explosive devices was completed and confirmed they were filled with an unknown suspected powder. After Shield Towing took possession of the vehicle, the Dayton bomb squad transported the suspected explosive devices to a safe location so they could be safely disabled. Once the suspected explosive devices were safely disassembled and packaged for evidence, they remained in the custody of the Dayton bomb squad.

10. Shortly after clearing the scene, two additional females showed up at the traffic stop location, 437 Scott Street, and began walking around the property looking for and questioning the homeowner, R.W., asking where "he" was. R.W. advised the trooper, the female arrived in a blue Jeep Compass with Ohio registration KPQ6055. The vehicle registration belonged to an individual identified M.P[3]. When Trooper Piatt ran Mr. Duane E. Crawford's information through LEADS, he learned that Crawford had an outstanding warrant for his arrest for menacing by stalking issued out of Clark County, Ohio. Mr. Duane E. Crawford is believed to be Edward Duane Crawford, referred to hereinafter as "Crawford". The image below is a photograph provided by the Ohio State Highway Patrol.

---

[3] I know the full name of M.P.

4



11. On or about June 8, 2025, Trooper Piatt obtained a state search warrant from Franklin County Municipal Court, signed by Judge Jodi L. Thomas for the cellular devices recovered from the 2007 red Chevrolet Cobalt. The search warrant was served on or about June 9, 2025.

12. On or about August 4, 2025, investigators from the Springfield Police Division assisted the United States Marshal Service (USMS) with the arrest of Edward Crawford on outstanding felony warrant. At approximately 4:30pm, investigators began surveillance in the area of Snyder Park, Springfield, Ohio based on information that Crawford might be there. Investigators observed Crawford and another individual, identified as F.R.[4] exit a Ford F150, bearing Ohio license plate T778240. After approximately one (1) hour, investigators observed Crawford enter the driver compartment of the truck and depart the area with F.R. in the passenger seat. Investigators surveilled Crawford in several locations. Crawford then parked the truck in the 1600 block of Catawba Avenue, Springfield,

Ohio. Once Crawford exited his vehicle and began talking to an unknown male across the street from 1610 Catawba Avenue, law enforcement approached, and secured Crawford without incident. F.R. was also found to have an outstanding warrant and was taken into custody as well. A search incident to Crawford's arrest revealed he was in possession of a plastic bag with approximately six grams of suspected controlled substances. Investigators further located United States currency and a small bag of suspected marijuana in Crawford's shorts pocket. A search of the vehicle revealed an American Tactical, model M1911G1, .45 ACP pistol, multiple rounds of .45 caliber ammunition, and firearm magazines inside a black shoulder bag located on the driver's seat.

13. At approximately 6:50pm, Springfield Police Detective Calvin Burch interviewed Crawford at the Springfield Police Division. At the beginning of the interview, Detective Burch advised Crawford of his Miranda rights. Crawford indicated he understood his rights and agreed to speak with the detectives. During questioning, Crawford acknowledged his possession of the suspected marijuana, cocaine and "fetty" to Detective Burch. "Fetty" is known to law enforcement as a slang term for fentanyl. Crawford estimated the total amount of the suspected controlled substances to be a couple grams. When asked about the firearm, Crawford stated he purchased it from a white male, whom he later identified as initials "C.R.[5]" Crawford told Detective Burch he had the firearm for a couple of months and kept it for protection.

14. The suspected controlled substances and were later submitted to the Bureau of Criminal Investigation (BCI) Laboratory for analysis. The BCI Laboratory's analysis report

---

[4] I know the full name of F.R.

identified the substances contained approximately 3.64 grams of an off-white powdery substance identified as Xylazine, Heroin, Fentanyl and ortho-Methylfentanyl and approximately 3.94 grams of an off-white chunky substance containing cocaine, a Schedule II controlled substance.

15. On or about August 5, 2025, Trooper Russel Davis obtained a state search warrant from the Clark County Common Pleas Court, signed by Judge Douglas M. Rastatter, for DNA standards from Edward Duane Crawford. The search warrant was executed on or about August 5, 2025.

16. On or about August 5, 2025, at approximately 1:46 p.m., Trooper Russel Davis conducted an interview with Crawford at the Clark County Sheriff's Office. Crawford was previously arrested on August 4, 2025, for an outstanding warrant. Trooper Davis advised Crawford he wanted to ask him questions and needed to read him his rights. Trooper Davis then read Crawford his Miranda Rights and asked if he understood them. Crawford indicated that he did. Crawford waived his rights. During the interview, Crawford provided his current address of 1703 Springmont and phone number as 937-450-3141. Crawford indicated he has had the number for about a year. Crawford confirmed knowing M.P., saying he is a family friend. Crawford also confirmed knowing A.F. but indicated he did not know her last name. Crawford stated he has known A.F. for about a year, last seeing her a week or so ago. Crawford told the Trooper he doesn't really know her and saw her in passing.

---

[5] I know the full name of C.R.

17. When Trooper Davis asked if he knew what kind of vehicle A.F. drove, Crawford stated different cars. Crawford believed she was an Uber or Door-Dash driver. Trooper Davis asked Crawford if he had ever seen her in a red Chevrolet Cobalt. Crawford stated, yep. Crawford estimated he last saw her in the red Cobalt a couple months ago. Crawford explained that A.F. gave all of them a ride in that car and he thinks he has been in all her cars. Crawford further stated A.F. previously let them all drive her car. If anyone needed to use the car, she would allow them.

18. Crawford told the Trooper that a few months ago, someone had A.F.'s car, who wasn't supposed to. A.F. was able to get the car back after paying the person who took it $40. Trooper Davis told Crawford it sounded like him and A.F. hung out quite a bit. Crawford said every now and then, but she would leave for a few days and come back. Crawford doesn't know if A.F. is homeless, but he has seen her sleep in her car. Trooper Davis asked Crawford if he'd ever run from the police before. Crawford responded, a long time ago. Crawford estimated it was sometime around the year 2000 and the agency was Springfield. When Trooper asked if he had ever run from the Ohio State Highway Patrol, Crawford stated, "nah, somebody had her car." Crawford told the Trooper someone had her car, and he was helping her look for her car. Crawford didn't know if A.F. rented it out or would let someone use it.

19. Crawford told Trooper Davis that his Cash-App card, phone, and chargers were in there. Crawford said the guy kept avoiding him saying that A.F. owed him money. He stated this also happened a couple months ago. Crawford did not know who the guy was, but they thought his name was "Ray" and had dreads in his hair. Trooper Davis asked

8

Crawford if he owned any vehicles. Crawford indicated he didn't own any cars and received rides whenever he needed to go somewhere.

20. Trooper Davis asked Crawford if he recalled where he was on June 8, 2025, in the morning. Crawford stated, probably on Pine Street, the house he was living in at the time. Trooper Davis asked Crawford if he would have been home on Pine Street at 7:00am. Crawford responded, more than likely, and might have been still laying down. When Trooper Davis asked if he would have been driving the red Chevrolet Cobalt on that day at 7:00am, Crawford stated, nah, it was probably around the time he was out looking for the car.

21. When Trooper Davis asked if there was any reason why they would have traffic camera video of him driving the car that day, Crawford stated he didn't know. Trooper Davis asked the question again and Crawford replied that he didn't think so and further commented that he had driven the car on a prior occasion. Trooper Davis asked Crawford if he ran from the police that day. Crawford stated no. As the interview continued, Trooper Davis asked Crawford if he was normally in possession of firearms or drugs. Crawford stated that he had them before. Trooper Davis asked Crawford when he was arrested the previous night, did he have them. Crawford stated, yeah. Crawford told the Trooper he purchased the gun months ago and acknowledged he was not supposed to have a firearm since he was a convicted felon. Crawford indicated he had the firearm for protection. During questioning, Crawford denied knowledge of the explosives, knowing anyone who made them or what "Crickets" were.

9

22. Trooper Davis told Crawford that law enforcement located "Cricket Bombs", drugs, loaded firearm magazines, and cell phones inside of the Chevrolet Cobalt on June 8th. Trooper Davis asked Crawford if his cell phone had passcodes on them. Crawford did not believe so. Trooper Davis asked Crawford how many phones he had in the vehicle. Crawford initially stated one, then changed his answer to two. Crawford identified one phone as an iPhone and the other was a cheap Walmart phone he used only for Wi-Fi.

23. Trooper Davis told Crawford that law enforcement collected the items they had previously discussed and asked if his DNA would be on them. Crawford indicated no. When Trooper Davis asked Crawford if he had told him the truth during the interview, Crawford replied, "somewhat." Trooper Davis then asked Crawford why he hadn't been honest. Crawford stated he didn't know and didn't want to get into trouble. When Trooper Davis again asked Crawford if he wanted to be honest with him, Crawford paused, then requested an attorney.

24. On or about October 14, 2025, I requested a records check of Crawford's identifying information through the National Firearm Registration and Transfer Record (NFRTR[6]). The search concluded that there were no records located associated with the information provided.

---

[6] The NFRTR is the central registry of all NFA firearms in the U.S. which are not in the possession or under the control of the U.S. Government. The registry includes (1) the identification of the firearm, (2) date of registration, and (3) identification and address of the person entitled to possession of the firearm (the person to whom the firearm is registered).

25. On or about October 16, 2025, the cellular devices were turned over to ATF from the Ohio State Highway Patrol and placed into evidence at the ATF Cincinnati Field Office, located in Cincinnati, Ohio 45202.

26. On or about October 19, 2025, I (an ATF Interstate Nexus Agent) confirmed the twenty-five (25) rounds of Hornady .45 ACP ammunition found inside the red Chevrolet Cobalt had traveled in or affected interstate commerce.

27. On or about November 4, 2025, I obtained a federal search warrant from the United States District Court for the Southern District of Ohio, signed by Magistrate Judge Caroline H. Gentry for the two cellular devices recovered from the red Chevrolet Cobalt vehicle on or about June 8, 2025. On November 14, 2025, law enforcement executed the search warrant for the cellular devices. A review of the data extraction from one of the cellular devices, iPhone, revealed the Apple ID, username, associated with the cellular device as eduanecrawf79@gmail.com.

28. On or about November 20, 2025, I received a Report of Examination from the ATF National Center for Explosives Training and Research (NCETR) regarding the two suspected destructive devices recovered from the red Chevrolet Cobalt on June 8, 2025. In summary, the report described the design and construction of the devices as being consistent with the remains of two improvised explosive weapons disrupted by bomb disposal actions. Both device's construction consisted of a quantity of explosive powder, identified by laboratory analysis as a black powder substitute, confined within a 12-gram metal $CO_2$ cannister. Pyrotechnic fuse was inserted into the confined explosives through a hole in the container as a means of initiation and secured with an adhesive. Based upon the above, it was

11

the opinion of the examiner that the devices in this investigation were designed as weapons and would be properly identified as improvised explosive bombs. Explosive bombs are destructive devices as that term is defined in 26 U.S.C., §5845(f) and would be regulated in accordance with the Federal firearms laws.

29. On or about January 28, 2026, I (an ATF Interstate Nexus Agent) confirmed the American Tactical, model M1911 GI, .45 ACP pistol, serial number GI113894, which was seized from the Ford F150, bearing Ohio license plate T778240 on August 4, 2025, traveled in or affected interstate commerce.

30. I have determined that Crawford has been previously convicted of offenses punishable by greater than a year in prison, based on a review of his computer criminal history (CCH) and court documents. Specifically, Crawford was convicted in the Common Pleas Court of Clark County, Ohio of the following offenses:

   a. Trafficking in Drugs, case number 03-cr-343; and

   b. Felonious Assault, case number 05-cr-34.

31. Based on the aforementioned facts, I assert that there is probable cause to believe that on June 8, 2025, and August 4, 2025, in the Southern District of Ohio, Edward Crawford did commit the following federal offenses: 18 U.S.C. § 922(g)(1) – Possession of Ammunition by a Prohibited Person; 18 U.S.C. § 922(g)(1) –Possession of a Firearm by a Prohibited Person; and 26 U.S.C. § 5861(d) Receipt or Possession of Unregistered Firearm.

///

///

*Christopher M. Reed*

Christopher M. Reed
Special Agent, ATF
Dayton, Ohio

Subscribed and sworn before me by telephone on February 10, 2026.

_____
United States Magistrate Judge
Caroline H. Gentry

13